The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Ballance. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award.
* * * * * * * * * * *
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
1. At all times relevant to this claim, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. The employer-employee relationship existed between the plaintiff and the defendant-employer on 14 August 1992.
3. Defendant-employer is self-insured and the servicing agency is Key Risk Management Services.
4. The date of the injury was 14 August 1992.
5. Plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer.
6. The average weekly wage of plaintiff at the time of injury was $320.00.
7. The Form 24, approved by the Commission on 21 April 1993, is admitted for the purpose of showing that plaintiff's workers' compensation benefits were terminated, not for the truth of the underlying matter.
8. Plaintiff's Exhibit 1, Key Risk Management Services Job Analysis for William Cordell is admitted.
9. After the hearing, the record remained open for receipt of deposition testimony of Dr. John V. Cattie and Dr. Charles J. Locke which are hereby admitted into evidence. Objections raised during deposition testimony are ruled upon according to law and this Opinion and Award.
* * * * * * * * * * * * * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. At the time of the initial hearing in this matter, the plaintiff was a 53 year old male who had completed the ninth grade of high school. Plaintiff had been employed as an electrician's helper with McCarter Electric for approximately ten years. As an electrician's helper, plaintiff's job consisted of heavy manual labor such as digging ditches and trenches, loading and unloading trucks, moving heavy material throughout a worksite, and laying and installing electrical pipe and wire.
2. Plaintiff's prior medical history included, among other conditions, an umbilical hernia repair which became infected postoperatively and which required a subsequent surgical repair.
3. Plaintiff had been treating with John V. Cattie, M.D., a board certified general surgeon, since March, 1992 for abdominal problems. Dr. Cattie's impression of plaintiff after his initial 23 March 1992 office visit was that plaintiff suffered from heartburn, abdominal pain of undetermined etiology, and a hernia of his upper abdominal wall. Dr. Cattie performed incisional hernia repair surgery on plaintiff on 20 May 1992 and recommended that plaintiff remain out of work for six weeks. Plaintiff was discharged from Dr. Cattie's care on 25 June 1992.
4. On 14 August 1992, plaintiff was lifting a large piece of heavy concrete without assistance at his job site when he felt a pop in his stomach, and immediate pain and a knot at the site of the pain. On 19 August 1992, Dr. Cattie diagnosed a probable recurrent incisional hernia of the abdominal wall. In September, 1992, Dr. Cattie recommended another hernia repair operation, this time utilizing a Gortex soft tissue patch to repair the hernia. Dr. Cattie thereafter performed surgery on plaintiff on 20 October 1992.
5. Plaintiff continued under Dr. Cattie's care until February, 1993. During plaintiff's November and December 1992 examination Dr. Cattie noted that the incision area was healing well but plaintiff was still having symptoms of tenderness in the area of the hernia repair, indigestion and heartburn. These were symptoms that plaintiff had complained of intermittently prior to his 14 August 1992 injury. On his 31 December 1992 visit, Dr. Cattie noted that plaintiff had significant tenderness over the mid abdomen and to the left of the midline.
6. In January, 1993, plaintiff complained of moderate to severe pain across the upper abdomen, and was very `touchy' and uncomfortable over most of the upper abdomen. Plaintiff told Dr. Cattie that lifting a single piece of wood at home gave him a significant amount of abdominal pain. Dr. Cattie examined plaintiff but could find no evidence of another hernia. Dr. Cattie also noted that plaintiff continued to have heartburn, and recommended that plaintiff undergo an endoscopic evaluation of his stomach.
7. On 25 January 1993, Dr. Cattie noted that plaintiff complained of abdominal pain whether he was lying down or standing up and whether he was active or inactive. Plaintiff also complained of symptoms of regurgitation and retrosternal discomfort. Dr. Cattie therefore arranged for plaintiff to undergo an endoscopy at Union Memorial Hospital on 29 January 1993.
8. The endoscopy revealed that plaintiff had a hiatal hernia. A hiatal hernia is a weakening of the muscular junction between the esophagus and the stomach. The endoscopy also found evidence of antral gastritis near the pylorus. Antral gastritis is an inflammation of the lining tissue near the end of the stomach. The pylorus is an organ that separates the end of the stomach from the small intestine. Finally, the endoscopy found the pylorus did not seem to contract normally. This could tend to cause the stomach contents not to empty out into the small intestine properly.
9. Upon re-examination by Dr. Cattie on 17 February 1993, plaintiff continued to complain about regurgitation and pain in his upper abdomen. Lynn Hugging, RN, a Key Risk Management Services medical case manager, was present with plaintiff and Dr. Cattie as they discussed plaintiff's symptoms and case. Dr. Cattie found no evidence of the recurrent incisional hernia for which he had treated plaintiff as a result of the 14 August 1992 work injury. Dr. Cattie also concluded that plaintiff had reached maximum medical improvement with no permanent impairment, and released him to return to work as of 22 February 1993, with a fifty pound lifting restriction.
10. The undersigned takes judicial notice of the Form 24 Application to the employer or Insurance Carrier to Stop Payment of Compensation with attached documents filed with the Industrial Commission on 6 April 1993. Based upon a letter attached to the Form 24 application from Larry Trull to Key Risk Management, plaintiff, on 8 February 1993, prior to his release to return to work, spoke by telephone to Larry Trull, a superintendent at defendant-employer's company, and informed him that he was in too much pain to work. At said time, Larry Trull told plaintiff that they could find some work for him to do and that he was aware of his restrictions. Larry Trull testified that defendant-employer had work available within plaintiff's restriction on 22 February 1993. Defendant presented no evidence of an approved job description for work plaintiff would be required to do as of said date. Defendant did present evidence of a job analysis for the position of "electrician top helper" dated 15 June 1993 which required that plaintiff lift a maximum of 90 pounds. This weight exceeded plaintiff's lifting restrictions and was thus not suitable work for plaintiff.
11. Plaintiff sought a second opinion evaluation from Dr. Charles J. Locke, a general surgeon who handles most of the endoscopic work at Brunswick Hospital in Supply, North Carolina on 16 April 1993. He presented with complaints of pain in the site of his 20 October 1992 incisional hernia repair. Examinations revealed profound tenderness in this area. Plaintiff complained that every time he bent over, he felt like acid was rushing up into his chest. Dr. Locke had heard this complaint before from people with significant gastroesophageal reflux with symptoms of esophagitis. Reflux esophagitis is the inflammation of the esophagus caused by the reflux of either acid of alkaline substances from the stomach up into the esophagus. Dr. Locke opined that it was possible that plaintiff's reflux symptoms did not occur until after the third hernia repair operation which included the Gortex soft tissue patch.
12. Dr. Locke further opined that plaintiff was probably a borderline refluxer and something probably changed in plaintiff's body as a result of his 20 October 1992 surgery that tipped him over the edge. The surgery may have changed the intra-abdominal pressure relationship between the lower esophageal sphincter in the abdomen. It may have changed the relationship of the sphincter of the esophagus with the diaphragm because of opening the abdomen and increasing the girth with the Gortex patch. According to Dr. Locke, plaintiff is not a candidate for surgery because he has too many medical risks. He is obese; he is in his fifties; he has already had coronary artery disease; he smokes and he has already had one episode of pneumonia after surgery. Dr. Locke found no evidence that plaintiff was a malingerer and opined that he was totally disabled.
13. Plaintiff was seen on 15 July 1993 for a re-evaluation by Dr. Cattie. Lynn Hugging from Key Risk was again in attendance at this office visit. Dr. Cattie reported that plaintiff's abdominal wall was well healed with no evidence of herniation. Dr. Cattie also reviewed a job description for plaintiff from defendant-employer. The job was described as "light duty sweeping, paperwork, and cleaning for time and material work." The equipment to be used was a "broom, pencil, paper and other paperwork items." The maximum required lifting was two to three pounds. This job description did not require plaintiff to stoop or bend. Also, according to the job analysis, this position was presently available. At said time, Dr. Cattie approved this position for plaintiff and also removed the fifty pound weight restriction limitation.
14. During his deposition testimony, Dr. Locke agreed that he would have recommended that plaintiff attempt the job offered to him on 15 July 1993 but he would have requested that it be modified to involve no twisting.
15. Plaintiff's refusal of the job offered to him on 15 July 1993 was unreasonable.
16. There is a disagreement between Dr. Cattie and Dr. Locke concerning the cause of plaintiff's reflux symptoms. Dr. Locke opined that plaintiff's reflux symptoms did not occur until after his last hernia repair operation. He explained that the intra-abdominal pressure which prevented plaintiff from refluxing prior to this surgery was lowered by the expansion of plaintiff's intra-abdominal volume by the Gortex soft tissue patch that Dr. Cattie used to repair the incisional hernia. Dr. Cattie opined, however, that the most common cause of reflux esophagitis is a hiatal hernia and that plaintiff's reflux symptoms were caused by his unrelated hiatal hernia. He explained that because of the decreased sphincter pressure due to the hiatal hernia, the contents of the stomach are capable of refluxing back up into the esophagus. Dr. Cattie's opinion is accorded greater weight because he was plaintiff's treating physician.
17. Plaintiff has not proven by the greater weight of the evidence that the abdominal pain or the reflux symptoms he was experiencing would prevent him from performing the light duty job described in the job analysis approved by Dr. Cattie on 15 July 1993.
18. At the initial hearing in this matter on 19 December 1994, plaintiff had been out of work since 20 October 1992. In May, 1993 and June, 1993 plaintiff went to the unemployment office in search of a job, but as of the date of the initial hearing he had never actually applied for a job and had not looked for a job since June, 1993.
19. As a result of his 14 August 1992 compensable injury, plaintiff was temporarily totally disabled from 17 October 1992 through 15 July 1993. Defendant paid temporary total disability benefits to plaintiff from 24 October 1992 through 21 February 1993, according to the Form 28B filed herein. The Industrial Commission did not approve defendant's Application to Stop Payment of Benefits until 21 April 1993.
20. Plaintiff's average weekly wage yields a compensation rate of $213.34.
* * * * * * * * * * * * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. On 14 August 1992, plaintiff sustained an admittedly compensable injury which resulted in a recurrent incisional abdominal hernia.
2. Plaintiff has presented insufficient evidence to prove that his recurrent condition known as reflux esophagitis and his current abdominal pain symptoms were caused by the incisional hernia repair operation of 20 October 1992 or by his 14 August 1992 admittedly compensable injury.
3. Plaintiff presented insufficient evidence to prove that his symptoms of abdominal pain or reflux esophagitis prevented him from returning to work with defendant-employer as of 15 July 1993. Defendant offered suitable employment to plaintiff on 15 July 1993. Due to plaintiff's unjustified refusal of said employment, payments of his temporary total benefits during the continuance of such refusal are suspended. N.C. Gen. Stat. § 97-32.
4. At the time the Industrial Commission approved the Stop Payment Application on 21 April 1993, plaintiff was still disabled as a result of his compensable injury to earn the same or similar wages as he had earned prior to his injury. Plaintiff was unable at said time to return to his previous job and defendant had not offered plaintiff suitable employment within his restrictions. N.C. Gen. Stat. § 97-2 (9). Consequently, the Form 24 application was improvidently approved.
5. Plaintiff is entitled to payment by defendants of all medical expenses arising from his compensable injury. The treatment and evaluation provided to plaintiff by Dr. Locke was reasonably required to effect a cure, provide relief and/or lessen his period of disability and should be approved.
* * * * * * * * * * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. Subject to attorney's fee hereinafter approved, defendant shall pay to plaintiff temporary total disability compensation from 22 February 1993 through 15 July 1993 at the rate of $213.34 per week in one lump sum without commutation.
2. Defendant shall pay all medical expenses incurred by plaintiff as a result of his compensable injury, including the medical expenses of Dr. Locke when bills for the same have been submitted pursuant to the approved Industrial Commission procedure. The medical services provided to plaintiff by Dr. Locke are approved.
3. An attorney's fee in the amount of twenty-five percent (25%) of the compensation awarded plaintiff herein is hereby approved for plaintiff's counsel and shall be paid directly to counsel for plaintiff.
4. The approval of the Form 24 Application is hereby SET ASIDE.
5. Defendant shall pay the costs due this Commission for the initial hearing before the Deputy Commissioner and each side shall bear its won costs for hearing before the Full Commission.
 S/ ________________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/ ________________________ J. HOWARD BUNN, JR. CHAIRMAN
S/ ________________________ THOMAS J. BOLCH COMMISSIONER